[No. 4695.    Decided July 29, 1903.]

RAND, McNALLY & Co., *Appellant,* v. W. G. HARTRANFT *et al., Respondents.*

SCHOOLS — TEXT BOOKS — CONTRACT OF STATE BOARD — CHANGE OF COURSE OF STUDY.

After the state board of education has adopted a series of text books, and prescribed a course of study, and made a contract with a publisher for the use of its books for five years in certain grades of the public schools, a county board will be enjoined from so changing the course of study for such grades that approximately twenty per cent. less students in the schools of a city will use such books during the year.

SAME — REVIEWING STATE BOARD OF EDUCATION.

The fact that such course of study was inadvisable is immaterial, and the courts cannot review the action of the state board except for fraud.

SAME —STATUTES — IMPAIRING OBLIGATION OF CONTRACT.

. The contract of the state board of education for the purchase of school books for a period of five years cannot be impaired by subsequent legislation.

Appeal from Superior Court, King County.—Hon. BOYD J. TALLMAN, Judge.    Reversed.

*Ballinger, Ronald & Battle* and *Vance & Mitchell,* for appellant.

*W. T. Scott* and *D. C. Conover,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This case was once before in this court on another appeal. The opinion rendered at that time will be found reported in 29 Wash. 591 (70 Pac. 77). Reference is hereby made to that opinion for a full statement of the issues involved in the case. Respondents had answered, admitting the change in the use of the    school

RAND, McNALLY & Co. v. HARTRANFT.     379

July, 1903.]     Opinion of the Court. HADLEY, J.

books as provided by appellant's contract with the state, as alleged in the complaint. The change consisted in withdrawing entirely from use in the first year of the schools the book called "Lights to Literature, Book 1," required by the contract to be used in said year, and in transferring said book to the second year for use therein. The book provided by the contract for the second year was in like manner transferred to the third year for use therein. In the same manner the books provided by the contract for use in the several grades from one to six, inclusive, were each transferred to the next succeeding grade, thus leaving the first grade without the use of any of appellant's readers, and establishing their use in the seventh grade, which was not included in the contract. Appellant by its complaint sought an injunction against respondents to prevent them from continuing the change of books as above stated, and alleged that it was materially damaged by such change. The answer, however, alleged that the readers were still used in the same number of grades as provided by the contract, and that the adoption and use of the books as changed has not, and will not, decrease or lessen the sales of any book or books contracted to be furnished by appellant. Appellant demurred generally to the affirmative matter contained in the answer and the demurrer was overruled. Appellant then elected to stand upon its demurrer and declined to plead further. The court thereupon entered judgment denying the injunction and dismissing the action. This court held that the demurrer was properly overruled, on the ground that the answer alleged that no actual damage had accrued or would accrue to appellant by reason of the acts of respondents alleged in the complaint. It was our view that a court of equity should not interfere by injunction on behalf of one who is merely

nominally damaged, and that the wrong asserted must be more than a mere technical or inconsequential one to warrant equitable interference. After so holding, the former opinion concluded as follows:

"However, in view of the extensive field covered by this contract, involving as it does the school districts throughout the entire state, and in view of the further fact that the principles here involved may apply to other similar controversies that may possibly arise, we believe it may be in the interest of all concerned, and may tend to lessen the number of such controversies, if this case shall be heard upon proofs, should the appellant so desire. We therefore instruct the lower court to grant appellant a reasonable time to further plead to the answer and submit proofs, if it so desires; in which case the judgment entered shall be vacated, but otherwise it shall stand affirmed."

It is not usual to remand a case for further proceedings, as the record stood upon the former appeal; but the reasons therefor as quoted above we believed were sufficient to justify such a course. Upon the return of the case to the superior court appellant replied to the answer and denied the averments thereof, that the change of books would not lessen the number of sales and that appellant has not been and will not be damaged thereby. Upon the issues joined, as outlined in the former opinion and as further indicated herein, the cause came on for trial before the court without a jury. Proofs were submitted, and the court rendered judgment for respondents and dismissed the case. It is now here upon appeal from said judgment.

At the trial it was stipulated between the parties that during the school year beginning July 1, 1901, and ending June 30, 1902, pupils were enrolled in the public schools of King county, exclusive of the city of Seattle, for the several grades or years as follows: For the first year

RAND, McNALLY & Co. v. HARTRANFT. 381

July, 1903.] Opinion of the Court. HADLEY, J.

of said schools, the number of 2,082; for the second year, 1,288; for the third year, 1,434; for the fourth year, 1,238; for the fifth year, 1,044; for the sixth year, 743; for the seventh year, 584, and for the eighth year, 440. An examination of the above figures shows that the total number of pupils enrolled in the first six grades or years was 7,829. It will be observed, by reference to the former opinion in this case, that the state board of education, as it was authorized by law to do, adopted a series of text books for use in the public schools of the state and prescribed a course of study for use in said schools. Having adopted appellant's readers for use in the first six years of the schools, it follows that, if that adoption had been followed in the schools of King county, at least approximately the number of pupils enrolled for the year above mentioned must have used appellant's books during that year. Under the change that was made by respondents, the use of appellant's books was discarded for the entire number of 2,082 enrolled in the first year. Under the plan of excluding the books from the first grade and including them in the seventh, we find the total enrollment for the year from the second to the seventh grades, inclusive, was 6,331. The grades from one to six, inclusive, for the year mentioned, therefore, had an enrollment of 1,498 more pupils than those from two to seven, inclusive. While the above figures may not be accepted as absolutely accurate in determining the effect of the change of books upon appellant's contract, yet we see no reason why they do not indicate approximately the relative number of pupils enrolled in the different grades from year to year. The relative enrollment must also indicate the relative number of appellant's books that will be used by the pupils, if its contract with the state shall

remain operative as made.    The loss of sales indicated by the above figures is about twenty per cent.; and its effect upon the value of a contract of the magnitude of the one involved here amounts to such serious impairment as we think warrants a court of equity in interfering to prevent such impairment.

At the trial below the court heard evidence in behalf of respondents as to the advisability of using appellant's reader in the first year of the schools.    The evidence was to the effect that the reader is too deep for use in that grade, and that by the use of another more rapid and effective results may be obtained for    the    pupils.    We think this evidence was immaterial.    The legislature first lodged the power in the state board of education to determine what books should be used, and to enter into contract in behalf of the state with publishers to    furnish them.    In delegating such power to the state board of education, the legislature undoubtedly    intended    that    the members of the    board should be accomplished educators and learned in the modern methods of teaching..    The courts cannot say that they were not such, and that their judgment was inferior, when contractual rights are involved, and where it is merely a question of difference in opinion between educators as to the wisdom of their selection of text books.    If the selection and adoption of books by the board were involved in actual fraud on the part of the parties to a contract, and if fraud were an issue, then, perhaps, the courts might consider the character of the books adopted, in so far as it might tend to show    the gross' neglect of duty and a failure to exercise the ordinary judgment common to reasonable men.    Such an issue is not before us.

Respondents are acting under what they claim to be

the authority of a legislative act passed after the appellant's contract was made. The contract was, however, a valid one when made, and by its terms was to continue in operation for the period of five years from and after September 1, 1900. We said before in this case that "the contract must be held to be a valid one, and it must not be impaired by any subsequent legislative enactment, or by the action of any board proceeding by authority of such subsequent legislation." The duty of courts to guard the sacredness of contracts is too well established and understood to require comment here. The stability and effectiveness of business transactions must largely depend upon this security. It is not for us to exercise our judgment, and say that a wiser contract might have been made; but it is our duty to enforce valid contracts as made by those lawfully authorized to make them.

The judgment is reversed and the cause remanded, with instructions to the lower court to grant the injunction prayed.

FULLERTON, C. J., and MOUNT and ANDERS, JJ., concur.